RAMSAUER et al. v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
October 17, 1927.

No. 5195.

Customs and usages ⬥⟿8—Seamen cannot collect wages for overtime under custom, in violation of mandatory provisions of statute (Seamen's Act 1915 [46 USCA § 673]).

Seamen cannot maintain suit to collect wages for overtime under a custom, alleged to be an implied condition of their contract, that they should work only between certain hours each day, and not at all on Sundays and holidays, unless absolutely necessary for the safety of the ship; such custom being in violation of the mandatory provision of Seamen's Act 1915, § 2 (46 USCA § 673 [Comp. St. § 8363b]), requiring seamen to be divided into watches, which shall be kept on duty successively during each 24 hours.

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Suit in admiralty by Hugh H. Ramsauer and others against the United States. Decree for the United States and libelants appeal. Affirmed.

Winter S. Martin, of Seattle, Wash., for appellants.

Bronson, Jones & Bronson, of Seattle, Wash., for the United States.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. Early in December, 1925, the appellants shipped as seamen on the steamship President Jefferson for a voyage from the port of Seattle to Manila and Oriental ports and return, signing the usual and customary shipping articles before the United States Shipping Commissioner. The amended libel averred that by custom sailors in the Pacific trade on American vessels worked from 8 a. m. until 5 p. m. on weekdays, and were paid overtime for work before 8 a. m. and after 5 p. m., and were likewise paid overtime for work and labor performed on Sundays and holidays, except where the performance of the work and labor was absolutely necessary for the safety of the ship, her passengers, crew, and cargo; that this custom was well understood by the master, owners, and operators of the Jefferson on the voyage in question; that the shipping articles were silent on the matter of overtime, but were executed by the ship, her master, and crew with full knowledge of the existence

of the usage and custom respecting the payment for overtime. It was further averred that the master and officers of the Jefferson, during the whole of the voyage, adopted 9 hours per day, namely, from 8 a. m. until 5 p. m. of each week day, other than holidays, as a workday unit, instead of dividing the sailors into at least two watches, as required by law, for the performance of the ordinary work incident to the sailing and management of the vessel. It was then averred that on 11 different dates during the voyage the appellants performed labor for certain periods before 8 a. m. or after 5 p. m., and performed labor for certain other periods on Sundays and holidays, other than labor absolutely necessary for the safety of the ship, her passengers, crew, and cargo. In one instance there was a claim for labor performed for a few hours on New Year's day while the ship was in port at Manila.

The court below sustained exceptions to the libel, and from a decree of dismissal the present appeal was prosecuted.

The appellants seem to contend that the custom or usage set forth in the libel, to the effect that from 8 a. m. to 5 p. m. should constitute a working day, and that any work performed before or after those hours should be overtime, must be read into the shipping articles and forms a part of the contract of employment. But the very custom or usage upon which the appellants rely was condemned by the Supreme Court in O'Hara v. Luckenbach S. S. Co., 269 U. S. 364, 46 S. Ct. 157, 70 L. Ed. 313. Section 2 of the Seamen's Act of March 4, 1915, 38 Stat. 1164 (46 USCA § 673 [Comp. St. § 8363b]), provides:

"That in all merchant vessels of the United States of more than one hundred tons gross, excepting those navigating rivers, harbors, bays, or sounds exclusively, the sailors shall, while at sea, be divided into at least two, and the firemen, oilers, and water tenders into at least three watches, which shall be kept on duty successively for the performance of ordinary work incident to the sailing and management of the vessel."

The court there held that this provision is mandatory; that the sailors, while at sea, must be divided into at least two watches; that the division must be as nearly equal as possible; and that the watches must be kept on duty successively. It was further declared that the provision was fundamentally a measure of precaution against those perilous and often unexpected emergencies of the sea,

when only immediate and wakeful readiness for action will avert disaster or determine the issue between life and death, and that the effect of the statute as a regulator of working conditions was a matter of subordinate intent. It is plain at a glance, therefore, that the custom or usage pleaded in the libel is in derogation of law, because an agreement on the part of the seamen to work nine consecutive hours only is utterly inconsistent with the legal requirement that they shall be divided into two or more watches and that the watches shall be kept on duty successively during the entire 24 hour period. The only penalty prescribed for a violation of the statute seems to be the right of the seamen to claim their discharge for its nonobservance, and this right they will seldom exercise, if other working arrangements more to their liking can be agreed upon. For this reason the courts should refuse to sanction working arrangements the necessary effect of which will be to defeat the will of Congress.

The same may be said of the custom or usage that no seaman should be required to perform any labor on Sundays or holidays, except where the performance of such labor was absolutely necessary for the safety of the ship. While the ship is at sea it is in the same peril on Sundays and holidays as on other days, and there is the same necessity and the same mandatory requirement of law for the maintenance of the successive watches. There can be no implied contract on the part of the ship or master, therefore, to pay overtime for labor performed before 8 a. m. or after 5 p. m. or for ordinary labor performed on Sundays or holidays while the ship is at sea.

As already stated, claim is made for a few hours overtime on New Year's Day, 1926, while the ship was in the port of Manila. The statute in question provides that while the ship is in a safe harbor no seaman shall be required to do any unnecessary work on Sundays or on certain holidays. There is no averment in the libel that the port of Manila was a safe harbor, or that the work was unnecessary, beyond the mere statement that it was routine work, such as cleaning and sweeping. In any event, the amount claimed by each of the appellants for this service is so small that it would not justify a reversal.

For these reasons we are of the opinion that there was no contract, express or implied, on the part of the master or ship to pay additional compensation for the services here involved. The decree of the court below is therefore affirmed.